UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KATHLEEN PITTMAN,<br>    *Plaintiff*,<br><br>    v.<br><br>BOMBARDIER RECREATIONAL<br>PRODUCTS, INC., and BRP US, INC.,<br>    *Defendants*. | No. 3:22-cv-1115 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Kathleen Pittman ("Plaintiff") has sued Bombardier Recreational Products, Inc. ("Bombardier") and BRP US, Inc. ("BRP") (collectively, "Defendants") for negligence. Notice of Removal at 10 ¶ 6, ECF No. 1 ("Compl."). Ms. Pittman allegedly suffered an injury while participating in a Can-Am Rider Education Course owned by Defendants. *Id.* at 9 ¶¶ 3–5.

Defendants move to dismiss the Complaint in its entirety based on lack of personal jurisdiction and failure to state a claim. Mot. to Dismiss, ECF No. 12-1 ("Mot.").

For the following reasons, the motion to dismiss is **GRANTED.**

Ms. Pittman will have until **July 28, 2023**, to seek leave to file an Amended Complaint. If the Court grants her motion for leave to file an Amended Complaint, Ms. Pittman shall complete service on both parties in compliance with this Ruling and Order.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

    A. **Factual Allegations**

Defendants allegedly own, advertise, and solicit a "3-wheel motorcycle riding course named Can-Am Rider Education." Compl. at 9 ¶ 3.

1

On August 26, 2020, Ms. Pittman allegedly participated in a Can-Am Rider Education Course offered in New Haven, Connecticut. *Id.* at 9 ¶ 4. During the course, an instructor allegedly grabbed and twisted Ms. Pittman's head with her motorcycle helmet on. *Id.* at 9–10 at ¶ 5.

Ms. Pittman alleges that Defendants' negligence in their hiring, training, and supervision of the Can-Am Rider Education Course, their failure to warn, their failure to develop policies to prevent harm, and their violation of their own policies, rules, and regulations caused her injury. *Id.* at 10 ¶ 6.

As a result of the incident, Ms. Pittman allegedly suffered spinal injuries, headaches, and muscle, nerve, soft tissue, and bone-related injuries. *Id.* at 10–11 ¶ 7. Ms. Pittman seeks to recover for her alleged medical expenses, economic loss, and pain and suffering. *Id.* at 10–11 ¶¶ 7–10.

### B. Procedural History

On August 9, 2022, Ms. Pittman filed her Complaint in Connecticut State Court. Compl.

On September 2, 2022, Defendants filed a notice of removal to federal court. Notice of Removal, ECF No. 1.

On September 6, 2022, Defendants filed a notice of pending motions in state court and a statement concerning removal. Notice of Pending Mots., ECF No. 8; Notice Statement Concerning Removal, ECF No. 9.

On October 14, 2022, Defendants filed a motion to dismiss. Mot.

Ms. Pittman did not file a response.

## II. STANDARD OF REVIEW

### A. 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). Where, as here, the parties have not engaged in discovery on the jurisdictional question, the plaintiff need only make a *prima facie* showing that jurisdiction exists. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) ("Where a court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." (alteration in original) (internal quotation marks omitted)).

"This prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Licci*, 673 F.3d at 59 (internal quotation marks omitted); *see also Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*, No. 3:09-cv-956 (WWE), 2010 WL 11527383, at *2 (D. Conn. May 4, 2010) ("At this stage of the proceedings, if the court relies upon pleadings and affidavits, the plaintiff must make out only a prima facie showing of personal jurisdiction, and the affidavits and pleadings should be construed most favorably to the plaintiff." (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986))), *aff'd*, 438 F. App'x 27 (2d Cir. 2011) (summary order), *as amended* (Sept. 23, 2011).

In evaluating a motion to dismiss under Rule 12(b)(2), a court considers the facts as they existed when the plaintiff filed the complaint. *See Glenwood Sys.*, 2010 WL 11527383, at *2

(citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)).

### B. 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss

for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### III. DISCUSSION

Defendants argue that the Complaint should be dismissed in its entirety because the Court lacks personal jurisdiction and because Ms. Pittman has failed to state a claim.

The Court will address each issue in turn.

#### A. Personal Jurisdiction

Three requirements must be met in order for a court to exercise personal jurisdiction: "First, the plaintiff's service of process upon the defendant must have been procedurally proper. Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective . . . . Third, the exercise of personal jurisdiction must comport with constitutional due process principles." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (quoting *Licci*, 673 F.3d at 59–60).

Defendants argue Ms. Pittman's Complaint fails under each of the three requirements.

### 1. Improper Service

"When a case is removed from a state court" and service was made before removal, "the federal district court must look to state law to determine whether service of process was valid." *USHA Holdings, LLC v. Franchise India Holdings Ltd.*, 11 F. Supp. 3d 244, 259 (E.D.N.Y. 2014) (citations omitted). Under Connecticut General Statute § 52-59d,

> (a) Notwithstanding any provision of the general statutes relating to service of process, civil process shall not be served outside of the United States of America in violation of any applicable treaty or convention, including without limitation, the Hague Convention on Service of Process Abroad.
> (b) If service of process cannot be made under the applicable treaty or convention within sixty days, the Superior Court may, upon application, order service of process upon such terms as the court deems reasonably calculated to give the defendant actual notice of the proceedings in sufficient time to enable the defendant to defend.

The United States and Canada are signatories to the Hague Convention, *Signify N. Am. Corp. v. Axis Lighting Inc.*, No. 19cv5516 (DLC), 2019 WL 4994288, at *1 (S.D.N.Y. Oct. 8, 2019) ("Canada and the United States are both signatories to the Hague Convention."), and "compliance with the [Hague] Convention is mandatory in all cases to which it applies," *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988).

Bombardier[1] argues that Ms. Pittman failed to properly serve Bombardier, which is a Canadian corporation. Opp'n at 7. Bombardier argues that because it is a Canadian corporation, service of process had to comply with the Hague Convention. *Id.* In Bombardier's view, the Hague Convention "generally requires each State that is a party to the Convention to establish a Central Authority that will effect service of process on that State's nationals." *Id.* at 7–8. Bombardier argues that the attempted service, "by leaving the Summons and Complaint with the

---

[1] BRP does not challenge Ms. Pittman's method of service.

Connecticut Secretary of State, rather than by sending the Complaint to Canada's designated Central Authority" is insufficient and requires dismissal. *Id.* at 8.

The Court agrees, in part.

The Hague Convention requires "each state to establish a central authority to receive requests for service of documents from other countries. Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law." *Schlunk*, 486 U.S. at 698–99 (citation omitted).

The Hague Convention also "permits alternative methods of service unless the receiving country objects," including "service by diplomatic and consular agents, service through consular channels, service on judicial officers in the receiving country, and direct service 'by postal channels.'" *Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1392 (S.D.N.Y. 2022) (quoting *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 980 (N.D. Cal. 2020)). "[T]he Convention permits countries to designate additional methods of service within their borders, either unilaterally or through side agreements with each other." *Facebook*, 480 F. Supp. 3d at 980.

Finally, the Hague Convention does not "apply if service can be completed without transmitting documents abroad (e.g., if substitute service on a domestic agent of the defendant is valid under local law and completed)." *Id.* (cleaned up); *see also Burda Media, Inc. v. Viertel*, 417 F.3d 292, 300 (2d Cir. 2005) ("The Hague Convention provides for several alternate methods of service: (1) service through the Central Authority of member states; (2) service through consular channels; (3) service by mail if the receiving state does not object; and (4) service pursuant to the internal laws of the state.").

"As numerous courts have recognized, binding Supreme Court precedent indicates that the Hague Convention outlines specific methods of service, and that methods of service that are not specifically authorized are impermissible under the Convention." *Smart Study Co.*, 620 F. Supp. 3d at 1393 (collecting cases); *see also Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) ("[T]he Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service wherever it applies." (quoting *Schlunk*, 486 U.S. at 699)).

As an initial matter, while the Hague Convention does not "apply if service can be completed without transmitting documents abroad," by, for example, serving a domestic registered agent, *Facebook*, 480 F. Supp. 3d at 980, Ms. Pittman must comply with the Hague Convention because Bombardier is not registered to do business in Connecticut and does not have a registered agent to accept service of process in this state. *See Business Records Search*, CT.Gov, https://service.ct.gov/business/s/onlinebusinesssearch?businessNameEn=6J2jbsdjH12Meh5N8yL%2FrtRo324GMT9iV%2F%2FR7gZbpiyBhkDCzO2t3hJli%2FIMqiHj (last accessed June16, 2023) (finding no results when searching for "Bombardier Recreational").[2]

Ms. Pittman attempted service on Bombardier by "leaving the Summons and Complaint with the Connecticut Secretary of State, rather than by sending the Complaint to Canada's designated Central Authority." Opp'n at 8; Ex. A to Notice of Removal at 7, ECF No. 1 ("Summons"). This is insufficient because it does not comply with any of the prescribed methods

---

[2] The Court can take judicial notice of publicly available information about the relevant parties. *See, e.g.*, *Abdullah v. Travelers Ins. Co.*, No. 13-CV-07825, 2014 WL 6807932, at *4 n.9 (S.D.N.Y. Oct. 28, 2014) (taking judicial notice "of the fact that no such insurance company [as the plaintiff alleges] is currently registered to do business in New York, based on available, online public records" and concluding that the plaintiffs had therefore improperly named the insurance company as a defendant).

under the Hague Convention. *See Burda Media, Inc.*, 417 F.3d at 300 ("The Hague Convention provides for several alternate methods of service: (1) service through the Central Authority of member states; (2) service through consular channels; (3) service by mail if the receiving state does not object; and (4) service pursuant to the internal laws of the state.").

Because the Court dismisses the Complaint for failure to state a claim without prejudice to filing an Amended Complaint, *see infra* Part B, if Ms. Pittman elects to file an Amended Complaint, she should serve it properly under Federal Rule of Civil Procedure 4,[3] as if it was the initial pleading in this action.

### 2. The Connecticut Long Arm Statute

Connecticut's long-arm statute provides that a nonresident foreign corporation will be amenable to a suit in this state on any cause of action arising:

> 1. out of any contract made in this state or to be performed in this state;
> 2. out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state;
> 3. out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or
> 4. out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. § 33-929(f).

---

[3] Notably, Rule 4 also provides for compliance with the Hague Convention for service outside of the United States. *See* Fed. R. Civ. P. 4(f)(1) ("[B]y any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."), 4(f)(2) ("[I]f there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice: . . . .").

Defendants argue that the Complaint fails to include allegations for either Defendant that meet the requirements of § 33-929(f). Mot. at 5. More specifically, Defendants contend that the "vague allegations that Defendants are doing business in this State" is insufficient. *Id.* Additionally, in Defendants' view, the allegations that "one or both Defendants owned, advertised and solicited a 3-wheel motorcycle riding course named Can-Am Rider Education" is insufficient because "there is no indication that any of this alleged conduct occurred in Connecticut, much less that the conduct involved any of the four jurisdictional grounds" and "because it fails to state *which* of the two Defendants actually owned, advertised, or solicited the training course." *Id.*

The Court disagrees.

Defendants argue that because the third paragraph of the Complaint does not specify where Defendants allegedly owned, advertised, and solicited 3-wheel motorcycle riding courses named Can-Am Rider Education, Compl. at 9 ¶ 3, there is no connection between the alleged tortious conduct and Connecticut. This interpretation, however, attempts to read portions of the Complaint in isolation rather than "assess[] 'the allegations of the complaint as a whole.'" *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47 (2011)).

More specifically, Ms. Pittman alleges that Defendants own a course titled Can-Am Rider Education, Compl. at 9 ¶ 3, and she was injured while participating in a course titled Can-Am Rider Education that was offered in New Haven, Connecticut, *id.* at 9–10 ¶¶ 4–5. Her injury was allegedly caused by an Instructor whom Defendants allegedly failed to properly hire, train, and/or supervise. *Id.* at 9–10 ¶¶ 5–6.

Read as a whole, and "constru[ing] the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true," *York*, 286 F.3d at 125, this is sufficient to satisfy § 33-929(f)(4) because the tortious conduct occurred in Connecticut. *See Neato, Inc. v. Great Gizmos*, No. 3:99-CV-958 (AVC), 2000 WL 305949, at *2 (D. Conn. Feb. 24, 2000) (finding § 33-929(f)(4) was satisfied in a patent infringement case where "Great Gizmos allegedly made sales of the infringing product in Connecticut" because "[t]he 'tort' of patent infringement occurs where the offending act is committed" and "only a single act of tortious conduct need be shown in order to invoke [Conn. Gen. Stat. § 33-929(f)] subsection (4)"); *Fleming v. HD Supply Waterworks, Ltd.*, No. 3:16-cv-2081 (AWT), 2018 WL 5993914, at *3 (D. Conn. Oct. 15, 2018) ("In the Connecticut statute, the emphasis is unmistakably upon the place where the tortious conduct occurred. It requires tortious conduct in this state." (quoting *S. New England Distrib. Corp. v. Berkeley Fin. Corp.*, 30 F.R.D. 43, 47 (D. Conn. 1962))).

Accordingly, the motion to dismiss will be denied on these grounds.

### 3. Due Process

The due process analysis "has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). With respect to minimum contacts, a court "determine[s] whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

And with respect to the reasonableness inquiry, personal jurisdiction comports with due process if "the defendant has certain minimum contacts with the [s]tate such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (cleaned up). "The Supreme Court has held

that courts must evaluate the following factors as part of this 'reasonableness' analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Chloé*, 616 F.3d at 164 (citing *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113–14 (1987)).[4]

First, Defendants argue that the Complaint "fails to allege minimum contacts between Defendants and Connecticut" because, while Defendants allegedly were doing business in Connecticut, there are "no facts suggesting that Plaintiff's claimed injuries arise out of, or relate to this unspecified business." Opp'n at 6. Defendants also contend that there are no allegations that Defendants "owned, advertised, or solicited the training course *in Connecticut*." *Id.*

Second, Defendants argue that the Complaint "fails to allege any facts showing that this Court's exercise of personal jurisdiction over Defendants would comport with traditional notions of fair play and substantial justice" because there are "no allegation[s] that Defendants participated in any way in the training course . . . or that Defendants had any reason to expect that their alleged conduct would subject them to jurisdiction in Connecticut." *Id.*

The Court disagrees.

The minimum contacts inquiry centers on "whether the defendants' suit-related conduct . . . creates a substantial connection with the forum State." *Waldman*, 835 F.3d at 335. The

---

[4] The Complaint does not include allegations sufficient to find that the Court has general jurisdictions over Defendants. *See Chloé*, 616 F.3d at 164 ("A court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts."). Therefore, the Court focuses its analysis on specific personal jurisdiction.

12

"relevant suit-related conduct" refers to "the conduct that could have subjected [the defendants] to liability." *Id.* A single act can be sufficient to support jurisdiction "[s]o long as it creates a 'substantial connection' with the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 n.18 (1985) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957)). That is particularly so where, as here, the single act is committed in the forum state. *Id.* at 476 ("[T]erritorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there . . . .").

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State," the court must "determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King*, 471 U.S. at 476 (citations and quotation marks omitted). The Second Circuit has cautioned that "dismissals resulting from the application of the reasonableness test should be few and far between." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 575 (2d Cir. 1996).

Here, the relevant suit-related conduct is Defendants' alleged negligence in operating the Can-Am Rider Education Course and negligence in hiring and supervising the instructor who allegedly injured Ms. Pittman. Compl. at 9–10 ¶¶ 3–6.

Defendants minimum contacts arguments fail for the same reasons that their long-arm statute arguments fail. *Supra* pp. 9–11. Read as a whole, and "constru[ing] the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true," *York*, 286 F.3d at 125, the allegations in the Complaint are sufficient to show minimum contacts because the tortious conduct occurred in Connecticut. *See, e.g.*, *In re Sterling Foster & Co., Inc. Sec. Litig.*, 222 F. Supp. 2d 289, 301 (E.D.N.Y. 2002) ("A single act by a defendant can be enough to

13

confer personal jurisdiction if that act gives rise to the claim being asserted." (quoting *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001))).

Moreover, the Court's exercise of personal jurisdiction satisfies the reasonableness inquiry because Connecticut has an interest in this case being adjudicated here, as the conduct occurred in this state, and Ms. Pittman has an interest in obtaining relief in Connecticut because she resides here and the conduct occurred here. *See, e.g.*, *Farrell v. U.S. Olympic & Paralympic Comm.*, 567 F. Supp. 3d 378, 388 (N.D.N.Y. 2021) (finding the reasonableness inquiry satisfied because the defendant "sponsored numerous events annually in this state" that relate to the alleged conduct and the plaintiff has an interest in litigating in the state "where both she and the alleged perpetrator lived when the abuse occurred and where she continues to live"). Defendants also do not argue that there will be any significant burden on them to defend this case in Connecticut.

Instead, Defendants argument essentially rests on foreseeability concerns. *See* Opp'n at 6 (arguing that there are no allegations that would give "Defendants . . . any reason to expect that their alleged conduct would subject them to jurisdiction in Connecticut"). As explained above, reading the Complaint as a whole, and making all reasonable inferences in Ms. Pittman's favor, the suit was foreseeable in Connecticut because Defendants allegedly owned a motorcycle education course in Connecticut where Ms. Pittman was injured while participating. Compl. at 9–10 ¶¶ 3–6. This is sufficient to put Defendants on notice to suit in this state based on the alleged negligence in failing to properly warn participants about the Can-Am Rider Education Course and negligence in hiring and supervising the Instructor who allegedly injured Ms. Pittman. Compl. at 9–10 ¶¶ 3–6; *see also, e.g.*, *Chloé*, 616 F.3d at 171 ("In actually sending

items to New York, there can be no doubt that [defendant's] conduct was purposefully directed toward the forum State." (citations, emphasis, and internal quotation marks omitted)).[5]

Defendants' arguments fall short of establishing that this is one of the "rare" situations in which sufficient minimum contacts exist but where the exercise of jurisdiction would be unreasonable. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) (citations omitted). Therefore, the Court concludes that its exercise of personal jurisdiction over Defendants would not offend due process.

Accordingly, the motion to dismiss will be denied on these grounds.

### B. Failure to State a Claim

Defendants argue Ms. Pittman failed to state a claim because there are insufficient allegations to show Defendants had a duty, that any duty was breached, and that Defendants' alleged breach caused Ms. Pittman's injuries. Opp'n.

The Court focuses on breach because this issue is dispositive.

An employer may be held directly liable for negligent hiring if the "employer's own negligence in failing to select an employee fit or competent to perform the services of employment" caused an injury. *Brooks v. Sweeney*, 299 Conn. 196, 207 n.12 (2010) (internal quotation marks omitted) (citing *Shore v. Town of Stonington*, 187 Conn. 147, 155 (1982)). Similarly, an employer may be held liable for the negligent supervision of an employee where the plaintiff "suffered an injury due to the [employer]'s failure to supervise an employee whom the [employer] had [a] duty to supervise." *Id.* (third alteration in original) (internal citations and quotation marks omitted).

---

[5] The Court notes that foreseeability is typically part of the minimum contacts analysis, but the Court nonetheless addresses Defendants' foreseeability arguments as part of the reasonableness inquiry because that is how Defendants framed their reasonableness argument. *See* Opp'n at 6.

An employer, however, does not have a duty to protect a plaintiff from an employee's tortious acts, whether due to allegedly negligent hiring or supervision, "unless the [employer] knew or reasonably should have known of the employee's propensity to engage in that type of tortious conduct." *Michalsky v. Moffly Publ'ns, Inc.*, No. FSTCV196042420S, 2020 WL 5537003, at *5 (Conn. Super. Ct. Aug. 13, 2020).

Defendants argue Ms. Pittman's negligent hiring and supervision theory fails because there are no allegations that the Instructor was employed by Defendants. Opp'n at 13. In Defendants' view, they "cannot be held liable for their alleged negligent hiring, training, supervision or retention of an employee accused of wrongful conduct unless they had notice of said employee's propensity for the type of behavior causing the plaintiff's harm." *Id.* at 15. More specifically, Defendants emphasize that Ms. Pittman "does not allege that the Instructor who assaulted her had any propensity for violence, much less that Defendants knew or had reason to know of such a propensity." *Id.*

Defendants also argue Ms. Pittman's failure to warn theory fails because she "does not allege any facts regarding warnings she received, how they were allegedly insufficient, or what warning should have been provided." *Id.* at 16.

The Court agrees.

To find a plausible negligent hiring and supervision claim, there must be some factual basis to support the inference that the Instructor had the propensity to engage in the type of conduct that is the basis of the Amended Complaint. *Compare Basone v. Wholefoods Mkt. Grp., Inc.*, No. FST-CV-19-6043885-S, 2020 WL 8264105, at *8–9 (Conn. Super. Ct. Dec. 14, 2020) (denying motion to strike negligent hiring claim where Amended Complaint alleged the defendant grocery store knew or should have known about employee's alleged propensity to

16

commit violence based on his prior criminal convictions for resisting arrest and disorderly conduct and defendant would have discovered his criminal convictions had it done a background check), *with Hearn v. Yale-New Haven Hosp.*, No. CV020466339S, 2007 WL 2938624, at *2–5 (Conn. Super. Ct. Apr. 2, 2007) (granting motion to strike negligent hiring claim because Complaint failed to allege any facts beyond an allegation that the hospital should have known of the employee's potential for tortious conduct).

Here, the Complaint does not include any allegations about the Instructor's propensity to engage in violent or aggressive behavior. Therefore, Ms. Pittman has failed to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, as to her negligent hiring and supervision theory. *See also Petruzzello v. Negron*, No. NNH-CV-21-6113803-S, 2022 WL 1049200, at *6 (Conn. Super. Ct. Mar. 4, 2022) ("It is fatal to a . . . negligent supervision [claim] if the complaint contains no allegations concerning the propensity of the employee to engage in the type of conduct which caused injury.").

Similarly, Ms. Pittman does not include any allegations about whether she received any warnings and how any warnings were allegedly deficient. *See Leonard v. Gen. Motors L.L.C.*, 504 F. Supp. 3d 73, 97–98 (D. Conn. 2020) ("[The plaintiff] has failed to offer any specific factual allegations concerning the warnings he did receive and how they were deficient."). *Cf. Karazin v. Wright Med. Tech., Inc.*, No. 3:17cv823 (JBA), 2018 WL 4398250, at *5 (D. Conn. Sept. 14, 2018) ("To the extent that Defendant requests detailed factual allegations regarding exactly what instructions should have been provided, its argument is unavailing as that information is both the type of detailed or elaborate factual allegations not required at this stage of litigation, and some of it likely the type of information that could not be available to Plaintiffs

prior to discovery." (citations and quotation marks omitted)). Therefore, she cannot sustain her negligence claim under a failure to warn theory.[6]

Accordingly, the motion to dismiss will be granted on these grounds.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.

Ms. Pittman will have until **July 28, 2023**, to seek leave to file an Amended Complaint. If the Court grants her motion for leave to file an Amended Complaint, Ms. Pittman shall complete service on both parties in compliance with this Ruling and Order.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of June, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[6] Ms. Pittman alleges Defendants were negligent for their "fail[ure] to develop policies to prevent harm to persons who signed up for the Can-Am Rider Education Course" and "violat[ion] [of] their policies, rules and regulations that are promulgated to keep the participa[nts] of the Can-Am Rider Education Course safe." Compl. at 10 ¶ 6. The Court construes these allegations as part of the failure to warn and negligent hiring and supervision theories of liability. If Ms. Pittman wishes to allege a separate theory of liability related to these allegations, then she should do so more clearly, if she seeks leave to file an Amended Complaint.